# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DARRELL D. MORGAN,**
**Claimant Below, Petitioner**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-435**          (JCN: 2023022682)

**CORNERSTONE LABOR SERVICES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Darrell D. Morgan appeals the October 7, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Cornerstone Labor Services, Inc. ("Cornerstone") timely filed a response.[1] Mr. Morgan did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied the addition of cervical disc displacement at C5-C6 as a compensable condition in the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Morgan sustained a workplace injury on June 5, 2023, while employed by Cornerstone. Mr. Morgan reported that he was working as an equipment operator when his truck hit a large rock, which caused injury to his neck and back. Mr. Morgan received treatment on June 6, 2023, at the emergency room at Beckley ARH. At the emergency room, Mr. Morgan explained that the heavy equipment he was operating struck a rock and jarred him; he complained of pain in his lower back, mid-back, ribs, and left shoulder. Mr. Morgan voluntarily left Beckley ARH and went to Raleigh General Hospital, where he was seen for complaints of cervical, thoracic, and lumbar spinal pain following an incident at his work. X-rays showed mild disc space narrowing at C5-C6 and anterior spondylosis. The thoracic x-ray was normal, and the lumbar x-ray showed anterior spurring of the superior plates of L4 and L5. Mr. Morgan was diagnosed with a cervical sprain, back pain, and muscle spasms. An Employees' and Physicians' Report of Injury signed by Mr. Morgan on June 5, 2023, and completed at Raleigh General Hospital on June 6, 2023, lists the diagnoses of cervical and thoracic strains as a result of the occupational injury.

---

[1] Mr. Morgan is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Cornerstone is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

On June 7, 2023, Mr. Morgan was seen by Jackie Shorter, Jr., PA-C, (in the office of Samuel Muscari, M.D.) for pain in his thoracic spine following his work injury. He was diagnosed with a thoracic strain and Ms. Shorter ordered a thoracic MRI. A second Physicians' Report of Injury signed by Mr. Morgan on June 7, 2023, and completed at Family Healthcare Associates on June 8, 2023, reflects a diagnosis of thoracic strain as a result of the occupational injury.

On June 22, 2023, the claim administrator issued an order holding the claim compensable for thoracic strain. On July 6, 2023, a thoracic MRI revealed no focal disc herniation, significant spinal canal stenosis, or signs of recent fracture. Only some disc space narrowing was noted in the thoracic spine, but C5-C6 degenerative disc bulging was partially visualized. From July 7, 2023, until September 11, 2023, Mr. Morgan followed up with PA-C Shorter. Mr. Morgan continued to be diagnosed with a thoracic sprain and he was referred to a specialist for possible injections.

Rajesh V. Patel, M.D., an orthopedic spine surgeon, evaluated Mr. Morgan on October 16, 2023, at the request of Dr. Muscari. Mr. Morgan complained to Dr. Patel of pain in his neck, thoracic spine, and rib area. Dr. Patel noted that Mr. Morgan continued to be off work since the injury. According to Dr. Patel, the thoracic spine x-rays and an MRI revealed degenerative changes at multiple levels. Further, Dr. Patel noted that the MRI also revealed disc protrusions in the cervical spine that were most pronounced at C5-C6 and C7-T1 with multilevel spondylosis. Dr. Patel assessed a cervical sprain, lumbar sprain, C5-C6 protrusion, right thoracic radiculitis, thoracic facet sprain, cervical facet sprain, and cervical disc protrusions. Dr. Patel recommended a cervical spine MRI to evaluate the cervical disc protrusions, and medial branch block injections in the thoracic spine. On November 13, 2023, Mr. Morgan saw Dr. Patel who noted that the cervical MRI was denied in the workers' compensation claim, although injections were authorized.

On November 28, 2023, Dr. Patel completed a Diagnosis Update requesting that cervical sprain and C5-C6 disc protrusion be added as compensable conditions. The claim administrator requested Randall L. Short, D.O., to review the medical records and advise whether cervical and lumbar spine sprain/strains should be included in the claim. After reviewing the available medical records, Dr. Short recommended that lumbar sprain/strain and cervical sprain/strain be allowed diagnoses in the claim. Dr. Short did not address the compensability of C5-C6 disc protrusions.

By order dated December 18, 2023, the claim administrator approved the addition of the following conditions to the claim: strain of muscle and tendon back wall of the thorax, sprain of ligaments of the cervical spine, and sprain of ligaments of the lumbar spine. However, the order denied the compensability of cervical disc displacement at C5-C6 on the basis of the Office of Medical Management's review and the Diagnosis Update by Dr. Patel. Mr. Morgan protested this order to the Board.

MRIs of the cervical and lumbar spine were performed on January 19, 2024. The cervical spine MRI revealed mild lateral recess and moderate left neural foraminal stenosis at C3-C4, mild posterior disc and osteophyte formation at C4-C5, posterior disc and osteophyte asymmetric to the right with mild right lateral recess stenosis and mild right neural foraminal stenosis, central disc protrusion at C6-C7, and posterior disc and osteophyte asymmetric to the right with right mild lateral recess stenosis at C7-T1, and neural foraminal stenosis. The radiologist's impression was degenerative changes with areas of central stenosis and neural foraminal stenosis. On January 24, 2024, Dr. Patel reviewed the MRIs and opined that a disc protrusion was seen at C5-C6 on the right side with minimal neural foraminal narrowing. Dr. Patel also noted degenerative changes in the cervical spine from C3 to T1. Relevant to this appeal, Dr. Patel diagnosed cervical sprain, cervical disc protrusion at C5-C6 on the right, and cervical spondylosis at C3-C7. Dr. Patel recommended conservative treatment for Mr. Morgan's neck and low back, although he mentioned that an EMG of the upper extremities may be needed and that surgery could be a possibility to address symptoms of radiculopathy.

On January 30, 2024, the claim administrator issued an order denying Dr. Patel's request to add cervical disc displacement at C5-C6 to the claim based on the findings of the Encova Select Grievance Board. The Encova Select Grievance Board findings dated January 30, 2024, recommended that C5-C6 disc displacement be disallowed in the claim based on Dr. Short's opinion that Mr. Morgan's ongoing symptoms were related to degenerative changes rather than the workplace injury. Mr. Morgan protested the claim administrator's order to the Board.

On February 22, 2024, Austin Nabet, D.O., examined Mr. Morgan for the work injury and noted that cervical disc displacement at C5-C6 had been denied in the claim. Mr. Morgan told Dr. Nabet that he experienced some right hand numbness after the accident, but denied that it involved his thumb or index finger. Based on his review of x-rays showing arthritic changes, Dr. Nabet determined that Mr. Morgan has preexisting cervical and lumbar spondylosis, unrelated to the injury in the claim. However, Dr. Nabet commented that cervical disc displacement "may be warranted in his case," but he did not find objective abnormal findings to support a finding that the diagnosis is related to the injury. Instead, Dr. Nabet concluded that Mr. Morgan's cervical findings preexisted the injury. Further, Dr. Nabet concluded that Mr. Morgan had reached maximum medical improvement for the compensable cervical, thoracic, and lumbar strains, and that further treatment would be due to Mr. Morgan's preexisting cervical spine disease. Dr. Nabet rated Mr. Morgan's cervical impairment at 8% whole person impairment ("WPI"), but apportioned it entirely to noncompensable conditions. Dr. Nabet assigned 0% WPI for the thoracic sprain, and 0% WPI for the lumbar sprain. In all, Dr. Nabet found no impairment related to the work injury in this claim.

On March 20, 2024, Dr. Patel wrote to counsel for Mr. Morgan, stating that a thoracic MRI performed in July 2023 revealed disc protrusions at C5-C6 and C7-T1.

3

Further, Dr. Patel noted that the cervical MRI performed in January 2024 revealed a disc protrusion at C5-C6 on the right, which was consistent with Mr. Morgan's right arm symptoms. In response to Dr. Nabet's report, Dr. Patel commented that he agreed that Mr. Morgan had preexisting degenerative conditions at C5-C6, but he noted that Mr. Morgan was asymptomatic at this level prior to the injury. Dr. Patel clarified that the injury did not simply aggravate the C5-C6 disc protrusion, but Mr. Morgan went from an asymptomatic condition to being symptomatic on the right side, which corresponds to the right-sided disc protrusion. Thus, Dr. Patel explained that he believed the discrete new injury would be cervical radiculitis, consistent with the right arm pain that Mr. Morgan presented with initially. Dr. Patel referenced the decision of the Supreme Court of Appeals of West Virginia ("SCAWV") in *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), and noted that while Mr. Morgan had C5-C6 disc degeneration and the disc protrusion could have been preexisting, he was asymptomatic prior to the injury in the claim and he had not had prior treatment. Following the injury, he became symptomatic and has continued to complain of neck pain. Thus, Dr. Patel requested that C5-C6 disc protrusion be held compensable.

In a letter addressed to Mr. Morgan's counsel, dated May 16, 2024, Dr. Muscari noted that Mr. Morgan was initially diagnosed with a thoracic sprain due to the work injury. Dr. Muscari agreed with Dr. Patel's recommendation for a repeat thoracic MRI due to Mr. Morgan's decrease in range of motion and strength. Dr. Muscari opined that the MRI and medications were medically necessary and reasonably related to the compensable injury.

In a deposition on May 23, 2024, Mr. Morgan testified that he had worked for Cornerstone for seven years. Mr. Morgan described a prior injury he sustained in August of 2022, noting that he was jarred at work while operating a loader at work. That injury, Mr. Morgan said, resolved quickly, and he did not miss any work. Specifically, he only recalled a single visit to a primary care clinic on August 31, 2022, regarding the August of 2022 injury. Mr. Morgan testified that on June 5, 2023, he sustained an injury when he ran into a large rock and was jarred. Mr. Morgan asserted that when he was injured, his back hurt, he felt as if his ribs were broken, he had difficulty moving his leg, and his right arm was numb. As a result of the injury, Mr. Morgan testified, he was unable to complete his workday, and he went to a hospital for treatment. Mr. Morgan asserted that he continues to experience pain in his neck and midback, and his right arm goes numb. As a result of the ongoing symptoms, Mr. Morgan stated that he cannot perform all aspects of his job, such as running an end loader, because of the bouncing and jarring it causes. Apart from the injuries in 2022 and June 2023, Mr. Morgan denied any other work injuries or automobile accidents.

By order dated October 7, 2024, the Board affirmed the claim administrator's January 30, 2024, order denying the addition of cervical disc displacement at C5-C6 to the claim. The Board found that Mr. Morgan did not establish that cervical disc displacement

4

at C5-C6 is causally related to the compensable injury. Mr. Morgan now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Morgan argues that the Board was clearly wrong in concluding that he did not prove by a preponderance of the evidence that cervical disc displacement at C5-C6 was sustained in the course of and resulting from the compensable injury. Mr. Morgan acknowledges that compensability in a workers' compensation claim requires three elements to coexist: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Further, Mr. Morgan also acknowledges that the procedure for adding a condition to the claim is the same as the standard that applies when determining compensability. *Miller v. Dynamic Energy, Inc.*, No. 21-0206, 2022 WL 4299290, at *4 (W. Va. Sept. 19, 2022) (memorandum decision).

Mr. Morgan acknowledges that cervical disc displacement may have preexisted his injury, as Dr. Patel, his treating surgeon, explained. However, Mr. Morgan argues that Dr. Patel and Dr. Muscari also observed that he was asymptomatic, with no radiculopathy, before the injury. Further, Mr. Morgan argues that Dr. Patel noted that the condition of C5-C6 radiculitis followed the injury. Mr. Morgan cited the SCAWV's decisions in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), and *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022), arguing that he suffered a discrete new injury

5

causing him to experience symptoms in his neck that he did not experience prior to the injury. Finally, Mr. Morgan contends that the Board should have afforded the opinion of Dr. Patel greater weight than the opinions of other doctors because he is the treating physician and is in the best position to diagnose the compensable conditions. We disagree.

Upon our review of the record, we find that the Board was not clearly wrong in determining that Mr. Morgan did not establish by a preponderance of the evidence that a C5-C6 cervical disc displacement was related to the compensable injury. Referencing SCAWV's holdings in *Gill and Moore*, the Board noted that there still must be sufficient medical evidence showing "a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer." Syl. Pt. 5, *Moore*. The Board noted that the MRI revealed degenerative disc bulging at C5-C6. Further, in his March 20, 2024, letter, Dr. Patel acknowledged that the cervical disc displacement at C5-C6 could have preexisted the compensable injury. As established in *Gill* and *Blackhawk Mining, LLC v. Argabright*, __ W. Va. __, 915 S.E.2d 7 (Ct. App. 2023), preexisting conditions are not compensable in West Virginia workers' compensation claims.

The Board also considered Dr. Patel's later opinion contained in his March 20, 2024, letter. In the letter, Dr. Patel opined that the aggravation of the disc displacement at C5-C6 resulted in the discrete new injury of cervical radiculitis. However, as the Board noted, Dr. Patel did not mention cervical radiculitis in the Diagnosis Update dated November 28, 2023. Neither Mr. Morgan nor Dr. Patel requested Cornerstone or its claim administrator add cervical radiculitis as a compensable component to the claim.

Moreover, Mr. Morgan's case differs from the facts in *Moore* in which the diagnosis requested was C5-C6 spondylosis with C6 radiculopathy. In *Moore*, the claim administrator denied the request. On appeal, Mr. Moore argued that "cervical radiculopathy," as a standalone condition, should have been considered by the Board and added to the claim. The *Moore* Court agreed and found that the claimant's "request to add cervical radiculopathy as a compensable condition was squarely before the Office of Judges and the Board of Review. So, it is properly before this Court on appeal." In the present case, however, Dr. Patel did not include any reference to radiculitis or radiculopathy in his request provided to Cornerstone's claim administrator. Instead, Mr. Morgan's sole request to the claim administrator was to add C5-C6 disc protrusion as a compensable condition, after Dr. Patel acknowledged that the C5-C6 disc protrusion may have preexisted the compensable injury.

Thus, we do not find that the Board was clearly wrong in affirming the claim administrator's January 30, 2024, order that denied the diagnosis update request for cervical disc displacement at C5-C6. Further, the Board was not clearly wrong in its determination that cervical radiculitis was not included in the diagnosis update. As set forth by the SCAWV, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). Based on the foregoing, we conclude that the Board did not err and its order is supported by substantial evidence.

Accordingly, we affirm the Board's October 7, 2024, order.

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

7